IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

_____

**STATE OF NEW MEXICO,**

   Plaintiff,

v.                No. CIV 00-851 BB/LFG

**PUEBLO OF POJOAQUE,**

   Defendant and
   Third-Party Plaintiff,

v.

**GALE A. NORTON, Secretary of United States Department of Interior, and NEAL A. McCALEB, Assistant Secretary for Indian Affairs, Department of Inferior,**

   Third-Party Defendants.

<u>MEMORANDUM OPINION
AND
ORDER ON THIRD-PARTY COMPLAINT</u>

   **THIS MATTER** is before the Court on the Motion to Dismiss or, in the Alternative, to Strike the Third-Party Complaint. The Court having reviewed the briefs of counsel, finds the motion well taken and it will be Granted.

*Discussion*

I.      *Facts*

The Pueblo alleges that Third-party Defendant Gale A. Norton, Secretary of Interior, is named as a defendant because, in her official capacity, she has the power "to approve, reject, or allow to go into effect by operation of law Tribal-State gaming compacts, provided that they comply with the IGRA [Indian Gaming Regulatory Act] and are otherwise lawful." Third-party Compl. ¶ 5. The Pueblo recognizes Secretary Norton and her delegate, Defendant Neal A. McCaleb, in fact, allowed the Pueblo's gaming compact "to go into effect by operation of law," without taking any action. After alleging a jurisdictional basis, the third-party complaint immediately sets out its purpose: "Third-party Plaintiff Pueblo of Pojoaque seeks judicial review of Third-party Defendant's findings and subsequent decision to allow the 1997 Tribal-State Gaming Compact ("1997 Gaming Compact") and 1997 Revenue Sharing Agreement between the State of New Mexico and the Pueblo of Pojoaque to go into effect by operation of law." Third-party Compl. ¶ 2. This also is the basic goal of the original complaint.

The Pueblo further maintains a letter from Mr. McCaleb demonstrates that the Secretary failed to act on its 1997 Gaming Compact and the related Revenue

2

Sharing Agreement ("RSA") as a result of the "exclusivity," "substantial exclusivity" or "limited exclusivity" policy of the Interior Department. Pueblo's Resp. at 1. "The Pueblo requests that this Court declare the 1997 RSA illegal <u>and</u> require Interior to issue a revenue-sharing rule defining the revenue-sharing policy. In the alternative, the Pueblo requests that this Court remand the 1997 RSA to Interior and require Interior to issue a revenue-sharing rule defining its revenue-sharing policy." *Ibid* at 4.

## II.     <u>Analysis</u>

The concept of tribal sovereignty pre-exists the Republic and was recognized codified in Article I, Section 8, Clause 3 of the United States Constitution granting Congress the power "to regulate Commerce with foreign Nations and among the several states and with the Indian Tribes." *See White Mountain Apache Tribe v. Bracker*, 448 U.S. 136, 142-5 (1980). This language has long been held to give Congress plenary and exclusive power to regulate all commercial affairs involving Indian Tribes. *Id.; see also Jicarilla Apache Tribe v. United States*, 601 F.2d 1116 (10th Cir. 1979); *Gaming Corp. of America v. Dorsey & Whitney*, 88 F.3d 536 (8th Cir. 1996). The Indian Gaming Regulatory Act ("IGRA") was an attempt by Congress to create a construct for "cooperative federalism" by balancing the competing sovereign interests of federal, state and

3

tribal interests. *Artichoke Joe's v. Norton*, 216 F. Supp. 2d 1084 (E.D. Cal. 2002). Therefore, determining whether Congress intended the federal courts to be involved in this process, and at what stage, is critical.

There is substantial question as to whether Congress intended district courts to have the authority to review the Secretary's inaction on a gaming compact executed by both the tribe and the state. Indeed, it appears Congress expressly authorized such a Secretarial course in 25 U.S.C. § 2710(d)(8)(C), which provides:

> (C) If the Secretary does not approve or disapprove a compact described in subparagraph (A) before the date that is 45 days after the date on which the compact is submitted to the Secretary for approval, the compact shall be considered to have been approved by the Secretary, but only to the extent the compact is consistent with the provisos of this chapter.

Since the IGRA itself thus expressly authorizes such Secretarial inaction, the Pueblo seeks to challenge the Secretary's course under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*. Alternatively, the Pueblo seeks to require the Secretary to promulgate a rule specifying when such approval by inaction is appropriate.

While the APA recognizes a presumption of judicial reviewability of administrative action, and even inaction, this presumption does not apply when

4

**Congress has clearly committed the issue to agency discretion.** *Heckler v. Chaney*, **470 U.S. 821 (1985). In addition to the clear language of the IGRA authorizing gaming compacts to become law without Secretarial approval, the considerations adopted by the** *Cheney* **Court would appear to discourage judicial review of the Secretary's inaction herein. 470 U.S. at 831-2.** *See also* **RICHARD J. PIERCE, JR., 3 ADMINISTRATIVE LAW TREATISE § 17.7 at 1271-2 (2002 ed.). Courts have generally been reluctant to review agency inaction where, as here, there is no clear statutory standard against which to measure such decisions.** *Baltimore Gas & Elec. Co. v. Federal Energy Regulatory Comm'n*, **252 F.3d 456 (D.C. Cir. 2001);** *Chemical Mfrs. Ass'n v. EPA*, **870 F.2d 177, 249 (5th Cir. 1989);** *Community Nutrition Inst. v. Young*, **818 F.2d 943 (D.C. Cir. 1987);** *Wilmington United Neighborhoods v. Califano*, **615 F.2d 112 (3d Cir. 1980).** *But see Heterochemical Corp. v. FDA*, **644 F. Supp. 271 (E.D.N.Y. 1986);** *Greene v. Costle*, **577 F. Supp. 1225 (W.D. Tenn. 1983).**

**This Court, however, is not required to address the reviewability of Interior's failure to take the action requested by the Pueblo as the third-party complaint does not comply with the requirements of Federal Rule of Civil Procedure 14. In order to comply with Rule 14, a third-party plaintiff must allege that the would-be third-party defendant "is or may be liable to the third-party**

plaintiff for all or a part of the plaintiff's claim against the third-party plaintiff." Rule 14(a).  This is the critical test measuring the legal validity of a third-party complaint.  *United States Fidelity & Guaranty Co. v. American State Band*, 372 F.2d 449, 450 (10th Cir. 1967); *Clark v. Associates Commercial Corp.*, 149 F.R.D. 629 (D. Kan. 1993); *Ocasek v. Hegglund*, 673 F. Supp. 1084 (D. Wyo. 1987); *Saine v. A.I.A., Inc.*, 582 F. Supp. 1299, 1310 (D. Colo. 1984); *Weil v. Dreher Pickle Co.*, 76 F.R.D. 63 (W.D. Okla. 1977).  The Pueblo argues paragraph 11 of the Third-party Complaint meets this requirement.  (Pueblo Resp. at 7.)  This paragraph alleges *inter alia*:

> The Department's invention and continued application of the unwritten and informal "substantial exclusivity" or "limited exclusivity" policy has, in effect, authorized the State to contravene IGRA ....  The existence of an informal and unwritten "substantial exclusivity" or "limited exclusivity" policy that authorizes the State to impose a tax, fee, charge or assessment on the Tribe defeats the purpose of IGRA....

This is an allegation that the Secretary's policies, or lack thereof, facilitate what the Pueblo alleges is an illegal RSA but it makes no claim that the Secretary is liable to the Tribe for any money it may owe the State.  It is really just an allegation that "but for the Secretary's illicit failure to act, the illegal" Gaming Compact with the RSA attached could not be operable.  The Pueblo does not

allege a right to indemnity, contribution or any other theory of liability requiring payment to the Pueblo, derivative from the Secretary's failure to act. *Hefley v. Textron, Inc.*, 713 F.2d 1487, 1492 (10th Cir. 1983) (under Rule 14 liability must be derivative); *In re Dep't of Energy Stripper Well Exemption Litig.*, 752 F. Supp. 1534 (D. Kan. 1990) (same). This is insufficient under Rule 14. *United States v. Olavarrieta*, 812 F.2d 640 (11th Cir. 1987); *United States v. One 1977 Mercedes Benz*, 708 F.2d 444 (9th Cir. 1983); *Commodity Futures Trading Comm'n v. Hunt*, 591 F.2d 1211, 1224 (7th Cir. 1979). The third-party complaint does not therefore comply with Rule 14 and must be dismissed. *Bethany Med. Ctr. v. Harder*, 641 F. Supp. 214 (D. Kan. 1986); *Johnson v. Rank*, 110 F.R.D. 99 (N.D. Cal. 1986); *see also* 3 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE ¶ 14.04[3][a] (Matthew Bender 3d ed.).

## O R D E R

Based on the above, the motion of Third-party Defendants Gale A Norton and Neal McCaleb is GRANTED, and the Third-party Complaint is DISMISSED WITHOUT PREJUDICE.

Dated at Albuquerque this 17th day of April, 2003.

*/s/ Bruce D. Black*

**BRUCE D. BLACK**
**United States District Judge**

**For Third-party Plaintiff:**

    Frank Demolli, Pueblo of Pojoaque Legal Department, Santa Fe, NM

**For Third-party Defendants:**

    Phyllis A. Dow, Assistant U.S. Attorney, Albuquerque, NM