IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

_____

**STATE OF NEW MEXICO,**

      **Plaintiff,**

**v.**                                        **No. CIV 00-851 BB/LFG**

**JICARILLA APACHE TRIBE, MESCALERO APACHE TRIBE, PUEBLO OF ACOMA, PUEBLO OF ISLETA, PUEBLO OF LAGUNA, PUEBLO OF POJOAQUE, PUEBLO OF SANDIA, PUEBLO OF SAN FELIPE, PUEBLO OF SAN JUAN, PUEBLO OF SANTA ANA, PUEBLO OF TAOS, and PUEBLO OF TESUQUE,**

      **Defendants.**

## MEMORANDUM OPINION
## AND
## ORDER ON ARBITRATION

**THIS CASE** is before the Court on the motion of Defendant[1] Mescalero Apache Tribe (hereinafter "Mescalero" or "the Tribe") to compel arbitration. The Court having considered the briefs of counsel, finds that the Gaming Compact

---

[1] Only the Mescalero Apache Tribe and the Pueblo of Pojoaque remain as Defendants in this action.

only provides for arbitration of claims of breach of any Compact provision and not the legality of the Revenue Sharing Agreement ("RSA") under the Indian Gaming Regulatory Act ("IGRA"), and the State of New Mexico is not estopped from challenging the arbitration.

*Discussion*

I.   *History and Issues*

This Court has previously traced the genesis of this dispute in the Memorandum Opinion filed December 7, 2000. Unlike the other Tribes and Pueblos, the Mescalero Apache Tribe did not challenge this Court's jurisdiction to issue injunctive and declaratory relief on the legality of the 1997 Gaming Compacts under the IGRA, 25 U.S.C. § 2076-2721. Rather, the Tribe requests this Court to compel the State to participate in arbitration.

Arbitration was invoked by the Tribe on March 30, 1998, alleging the RSA in particular violated the IGRA and was therefore not a legal component of the Compact. On April 7, the State acknowledged the Tribe's arbitration petition, but disputed the issues to be arbitrated. On September 28, 1998, the State filed its Answer in the arbitration and again objected to arbitrating the legality of the RSA. Other tribes then attempted to intervene in the arbitration, but the State

insisted such tribes could only arbitrate the amount due under the Compact and not expand the proceedings to include the validity of the RSA. At this point, the correspondence between the State, the Tribes, and the arbitrators reflects further and continuing disagreement over the scope of the arbitration. Because of this, the arbitrators, at the State's request, vacated the preliminary hearing set for December 17, 1998, and two of the arbitrators then resigned.

In May 1999, the State sought a writ of mandamus from the New Mexico Supreme Court. The petition sought to prohibit the American Arbitration Association and the new arbitrators from proceeding further with the arbitration. The State further requested the New Mexico Supreme Court instruct the arbitrators that they were prohibited by the New Mexico Constitution from making any decision as to the validity of the Gaming Compacts. After oral argument, the New Mexico Supreme Court entered its order in July 1999, denying the petition as premature, and granting leave to the State to petition that court for an appropriate writ when the issues had matured.

On February 10, 2000, the arbitrators indicated their intent to determine the issue of the validity of the revenue-sharing provisions of the Compacts, and the State renewed its petition for mandamus or any other appropriate writ. The

**New Mexico Supreme Court then issued an order staying all proceedings in the arbitration until further order of the Court. The stay is scheduled to remain in effect until January 2004.**

**The case at bar was filed in June 2000. After this Court's order denying the motion by the other Tribes to dismiss for lack of jurisdiction was affirmed by the Tenth Circuit Court of Appeals, only Mescalero and Pojoaque failed to negotiate new Gaming Compacts with the State.**

**The issues now before this Court are whether: (1) the parties contractually agreed in the Gaming Compact to arbitrate the issues raised by the instant complaint and the arbitration petition; and (2) even if their Gaming Compact does not require arbitration of this dispute, the State has participated in arbitration to a degree that it should now be estopped from challenging that proceeding.**

**II.     <u>Neither the Contract nor Federal Law Requires Arbitration</u>**

**The "gateway" question centers on which forum should decide the permissible scope of arbitration. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002). "[T]he question of arbitrability – whether a [contract] creates a duty for the parties to arbitrate the particular grievance – is undeniably an issue for**

4

judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT&T Tech., Inc. v. Communications Workers of America*, 475 U.S. 643, 649 (1986), *quoted in Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998).

Arbitration is a matter of contract and a party cannot be required to arbitrate a dispute unless it has agreed to do so. *Spahr v. Secco*, 330 F.3d 1266 (10th Cir. 2003). "As in any contract case, the parties' intent is controlling with regard to whether they agreed to arbitrate a particular dispute...." *Alcaraz v. Avnet, Inc.*, 933 F. Supp. 1025, 1027 (D.N.M. 1996). *See also Armijo v. Prudential Ins. Co. of America*, 72 F.3d 793, 797 (10th Cir. 1995). The question then becomes whether the language of the 1997 Gaming Compact, which is merely a contract between sovereigns, *State v. Oneida Indian Nation of New York*, 78 F. Supp. 2d 49, 60 (N.D.N.Y. 1999), allows for arbitration of the issues raised in the arbitration and the instant complaint.

Whether the parties agreed to subject this particular dispute to arbitration is governed by Section 7 of the 1997 Gaming Compact. That provision provides:

**SECTION 7.  Dispute Resolution.**

**A.    In the event either party believes that the other party has <u>failed to comply with or has otherwise breached any provision of this Compact</u>, such party may invoke the following procedure:**

> **1.    The party asserting noncompliance shall serve written notice on the other party.  The notice <u>shall identify the specific Compact provision</u> believed to have been violated and shall specify the factual and legal basis for the alleged noncompliance.  The notice shall specifically <u>identify the date, time and nature of the alleged noncompliance</u>.  Representatives of the State and Tribe shall thereafter meet within thirty (30) days in an effort to resolve the dispute.**
>
> **2.    In the event an allegation by the complaining party is not resolved to the satisfaction of such party within ninety (90) days after service of the notice set forth in Paragraph A.1. of this section, the complaining party may serve upon the other party <u>a notice to cease conduct of the particular game(s) or activities alleged by the complaining party to be in noncompliance</u>.  Upon receipt of such notice, the responding party may elect to stop the game(s) or activities specified in the notice <u>or invoke arbitration and continue the game(s) or activities pending the results of arbitration</u>.  The responding party shall act upon one of the foregoing options within thirty (30) days of receipt of notice from the complaining party.**

**Section 7.A (emphasis added).**

**Simply put, then, the Court must examine this language and decide whether the legal dispute set out in the arbitration and the subsequent legal complaint is "arbitratable" within the intent of the parties as determined by the language of the**

6

Compact.  *Green Tree Fin. Corp. v. Bazzle*, 123 S. Ct. 2402 (2003); *McCarthy v. Azure*, 22 F.3d 351 (1st Cir. 1994).  To determine this, the Court must compare the language of the petition and the complaint with the arbitration language in the Compact.  *Gibson v. Wal-Mart Stores, Inc.*, 181 F.3d 1163, 1165-6 (10th Cir. 1999); *Armijo*, 72 F.3d at 796-800.

The State originally notified Mescalero it was in violation of Section 4.E.5 of the Compact and Section 3.B of the RSA, and concluded "[t]he Tribe has thirty days from receipt of this notice to either make payment required by the Compact, invoke arbitration or cease gaming activity."  Gov.'s Chief of Staff to Mescalero President letter, March 2, 1998.  Mescalero responded that it would indeed invoke arbitration.  "The dispute to be arbitrated arises from the State of New Mexico's failure to negotiate with the Mescalero Apache Tribe in good faith to conclude a tribal-state compact pursuant to the requirements of federal law ...."  Tribal attorney to Gov. Johnson letter, March 30, 1998.  Thus, while the State originally attempted to limit the dispute to violations of the amount due under the Compact, it was, and is, the Tribe who seeks arbitration over whether the Compact was negotiated under and complies with federal law.  This is significant because it is the party invoking arbitration whose complaint sets the scope of the

arbitration. *PacifiCare Health Sys., Inc. v. Book*, 123 S. Ct. 1531, 1534-6 (2003). The Tribe's petition sought resolution of the global issues, *i.e.*, whether the RSA was part of the Compact, and, if so, did it comply with the IGRA. Although resisting arbitration of these issues, the State has now filed suit seeking judicial resolution of the dispute originally framed by the Tribe for arbitration, adding that if the RSA is invalid no Compact exists. The State prays for the following relief in the complaint:

> 1. That the Court declare that the revenue sharing provisions entered into by the defendant tribes and pueblos are a part of the Compact entered into by the parties that is in effect under IGRA;
>
> 2. That the Court declare that revenue sharing by Indian tribes and pueblos with a State in exchange for the right to limited competition from non-Indian gaming is legal under IGRA;
>
> 3. That the Court find that by not making all revenue sharing payments to the State the defendant tribes and pueblos are conducting class III gaming in violation of the terms and conditions of the Compact and its revenue sharing provisions;
>
> 4. That the Court enjoin all class III gaming being conducted by the defendant tribes and pueblos;
>
> 5. That, in the alternative, the Court declare that if the revenue sharing provisions are not enforceable for any reason, then the State of New Mexico has not entered into a Compact with the defendant tribes and pueblos under IGRA; and

>     6.    That plaintiff be awarded such other and further relief as
> the Court and justice deem fit and proper.

Pl.'s Compl. at 8.

Section 7 of the Gaming Compact provides for arbitration only when a party "has failed to comply with or has otherwise breached <u>any provision</u> of the Compact." Section 7.A (emphasis added). The Tribe maintains the RSA is not a part of the Compact and therefore may be separately challenged without endangering the validity of the Compact. The State does not argue that the Tribe has violated "any provision," but rather "that if the Revenue Sharing provisions are not enforceable for any reason, then the State of New Mexico has not entered into a Compact with the defendant tribes and pueblos." Pl.'s Compl. at 8. Neither the Tribe's nor the State's claims regarding enforcement of the RSA therefore allege a violation of "any provision of the Compact."

That the arbitration clause contemplates specific challenges to specific violations, rather than a request the contract itself be declared void, is supported by the requirement of "a notice to cease conduct of particular game(s) or activities alleged by the complaining party to be in noncompliance." Section 7.A.2. The alternative to stopping such game or activity is to "invoke arbitration and continue the game(s) or activities pending the results of arbitration." *Id.* Based on

9

consideration of this language, the Court must conclude that since each party argues that the action of the other party challenges the legal validity of the Compact, and not merely some specific gaming activity, Section 7 does not control. This interpretation is also consistent with Subsection 7.B that "[n]othing in Subsection 7.A shall be construed to waive, limit or restrict any remedy that is otherwise available to either party to enforce or resolve disputes concerning the provisions of this Compact."

The Second Circuit Court of Appeals confronted a similar situation in *State v. Oneida Indian Nation of New York*, 90 F.3d 58 (2d Cir. 1996). In that case, the State of New York and the Oneida Nation ("the Nation") entered a gaming compact pursuant to the IGRA. That compact allowed the Nation to conduct gaming approved by the State. The Nation began an "Instant Multi-Game" which was initially approved by the New York State Racing and Wagering Board but rejected by the Governor of New York. When the Nation continued to offer that game, New York filed suit seeking a declaratory judgment that the game violated the compact. The Nation argued the mandatory arbitration clause required the matter be arbitrated. The district court agreed and dismissed the case for lack of jurisdiction. The Court of Appeals reversed.

**The Second Circuit recognized the general presumption in favor of arbitrability, but also recognized that the parties ultimately dictated what was subject to arbitration in the compact language. The Court of Appeals recognized that the district court had failed to read the arbitration clause as a whole and compare it to the language of the complaint. The Second Circuit applied this comparative approach saying:**

> **As we see it, the arbitration clause, read as a whole, evinces the parties' intent to exclude the type of claim at issue here from mandatory arbitration. The exclusionary clause applies to "claims] by the State that the Nation is conducting [a game] not authorized by th[e] Compact." In its complaint, the State alleged that the request for an amendment adding Instant Multi-Game "failed to comply with the terms of ... the Compact." The State also alleged that the amendment "has not been approved by the State pursuant to the terms of the Compact." Although these allegations may not fit word for word under the exclusionary clause, we will not don blinders to their obvious meaning and thereby thwart the reasonable expectations of the parties to the Compact. *See Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 28 (2d Cir. 1995) (stating that the "main concern in deciding the scope of arbitration agreements is to 'faithfully reflect[] the reasonable expectations'" of the parties (quoting *Haviland v. Goldman, Sachs & Co.*, 947 F.2d 601, 605 (2d Cir. 1991), *cert. denied*, 504 U.S. 930 (1992) (alteration in *Leadertex*))). No other reading of the arbitration clause is tenable.**

**90 F.3d at 62-3 (some citations omitted). Likewise, the arbitration clause in the case at bar, when read as a whole, leaves the impression the reasonable expectation**

11

of the parties was to exclude disputes over the legal validity of the RSA disputes subject to arbitration under Section 7.

### III. The State is not Estopped from Litigating

As noted earlier, the Tribe invoked arbitration in March 1998. During earlier briefing in this case, frequent reference was made to the arbitration proceedings and the posture of the parties in those proceedings. In particular, the State argued the Court could not judicially compel arbitration as "[t]he State has not refused to arbitrate and there is no allegation that the State has refused to arbitrate." (State's Resp. to Mescalero Mot. to Compel at 2). This caused the Court to question whether the State had participated, and raised issues, in the arbitration to such an extent that equity would now estop it from withdrawing from arbitration. *See, e.g., Mertz v. Merrill Lynch, Pierce, Fenner & Smith*, 39 F.3d 1482 (10th Cir. 1994); *Nghiem v. NEC Elec., Inc.*, 25 F.3d 1437, 1440 (9th Cir. 1994); *Int'l Bhd. of Teamsters v. Washington Employers, Inc.*, 557 F.2d 1345, 1349 (9th Cir. 1977). After reviewing the available documents and the briefs of the parties, however, it is clear the State did not sufficiently invoke the jurisdiction of the arbitration panel to require estoppel.

12

**Mescalero argues it was the State which originally told the Tribe to either pay up under the RSA schedule or invoke arbitration. The Tribe argues the State took this position knowing that the Tribe refused to pay because it claimed the Compact was illegal. They further contend that although the State repeatedly informed the arbitrators that the validity of the Compact and/or RSA were not the subject of the arbitration, the State explicitly recognized the Tribe would raise this as a defense. Recognition that the Tribe would defend against the State's collection claim by challenging the Compact is not sufficient to estop the State from challenging the arbitrators' authority to determine the legality of the Compact. *See PacifiCare Health Sys.*, 123 S. Ct. at 1534-6.**

**The Tribe next argues that the State waived its right to challenge the arbitration because the State requested affirmative relief by demanding all payments required by the RSA. Once again, this is not really requesting affirmative relief from the arbitrators, but the essence of the demand which precipitated the dispute. In such a context, imposition of the legal doctrine of waiver is not appropriate. *Milton Schwartz & Assoc., Architects v. Magness*, 368 F. Supp. 749 (D. Del. 1974). This is particularly true when no prejudice is alleged by the Tribe. *See ATSA of Cal., Inc. v. Continental Ins. Co.*, 702 F.2d 172 (9th Cir.**

13

1983); *Carolina Throwing Co. v. S&E Novelty Corp.*, 442 F.2d 329 (4th Cir. 1971). Since there was no agreement as to the three designated arbitrators and thus no substantive decisions by the panel, the State did not obtain any advantage by "testing" arbitration. Rather, once the Tribe framed the question to be arbitrated as one challenging the very legality of the RSA, the State refused arbitration of that issue immediately and consistently.

## O R D E R

For the aforestated reasons, the Tribe's Motion to Compel Arbitration is DENIED.

Dated this 2nd day of December, 2003.

_____
**BRUCE D. BLACK**
**United States District Judge**

**Counsel for Plaintiff:**
    Patricia A. Madrid, Attorney General, Christopher D. Coppin, Assistant Attorney General, Albuquerque, NM

**Counsel for Defendants:**
    Gregory M. Quinlan, Robert M. Doughty II, QUINLAN BLOOM & DOUGHTY, Alamogordo, NM, for Mescalero Apache Tribe
    Michael Pezzulli, Christopher L. Barnes, PEZZULLI KINSER, Dallas, TX, for Mescalero Apache Tribe
    Frank Demolli, Santa Fe, NM, for Pueblo of Pojoaque